No. 15-1776

## UNITED STATES COURT OF APPEAL
## FOR THE SEVENTH CIRCUIT

DIRECT DIGITAL, LLC.,
A Delaware Limited Liability Company

*Defendant-Appellant,*

v.

VINCE MULLINS,
On Behalf of Himself and All Others Similarly Situated,

*Plaintiff-Appellee*

Appeal from the September 30, 2014 Class Certification Decision of the United States District Court for the Northern District of Illinois, Eastern Division

**Case No. 13-CV-1829**

The Honorable Judge Charles R. Norgle

## SUPPLEMENTAL BRIEF AND REQUIRED SHORT APPENDIX OF DEFENDANT-APPELLANT DIRECT DIGITAL IN SUPPORT OF ITS APPEAL OF CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(F)

*Counsel of Record*
Ari. N. Rothman
anrothman@venable.com

*On the Brief*
Samantha M. Williams
Benjamin E. Horowitz
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000

*Additional Counsel*
Darrell J. Graham
ROESER BUCHEIT & GRAHAM
LLC
Two North Riverside Plaza, Ste. 1420
Chicago, Illinois 60606
dgraham@rbglegal.com

Daniel S. Silverman
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA 90067

*Counsel for Defendant-Appellant*

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 15-1776

Short Caption: Direct Digital, LLC v. Mullins

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[   ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Direct Digital, LLC

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Venable LLP

Roeser Bucheit & Graham LLC

Kovitz Shifrin Nesbit

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   N/A

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

   N/A

Attorney's Signature: s/ Ari N. Rothman    Date: 5/4/2015

Attorney's Printed Name: Ari N. Rothman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☒   No _____

Address: 575 7th Street, N.W.

Washington, D.C. 20004

Phone Number: 202-344-4220    Fax Number: 202-344-8300

E-Mail Address: anrothman@venable.com

rev. 01/08 AK

# Table of Contents

TABLE OF AUTHORITIES ............................................................................................ ii

JURISDICTIONAL STATEMENT .............................................................................. 1

STATEMENT OF THE ISSUES...................................................................................... 1

STATEMENT OF THE CASE.......................................................................................... 1

SUMMARY OF THE ARGUMENT .............................................................................. 1

ARGUMENT .................................................................................................................... 2

I.   THE DISTRICT COURT ERRED IN FAILING TO CONDUCT A PREDOMINANCE
     ANALYSIS................................................................................................................ 2

II.  THE DISTRICT COURT ERRED IN RELIEVING MULLINS OF HIS BURDEN TO
     ESTABLISH THAT IDENTIFICATION OF CLASS MEMBERS IS FEASIBLE. ............... 3

     A.  Identification Of Class Members Is Part Of The Certification Analysis. ........................... 4

     B.  Certification Is Improper Where A Plaintiff Fails To Establish Feasibility. ...................... 4

     C.  Identification Of Class Members Is Infeasible Where Too Many Individualized Hearings
         Are Required. ....................................................................................................... 5

     D.  Mullins Did Not Satisfy His Burden To Prove Feasibility.  Moreover, The Record
         Establishes That It Would Be Infeasible To Identify Class Members............................... 7

     E.  The Third Circuit's Feasibility Decisions Are Not Novel. .................................................. 9

III. THE DISTRICT COURT ERRED IN HOLDING THAT EFFICACY WAS A COMMON
     QUESTION............................................................................................................... 11

IV. THE DISTRICT COURT ERRED IN FINDING THAT MULLINS' CLAIM WAS
    TYPICAL AND THAT HE WAS AN ADEQUATECLASS REPRESENTATIVE............. 13

CONCLUSION................................................................................................................. 15

CERTIFICATE OF COMPLIANCE WITH FED. R. CIV. P. 32(A)(7).........................................

PROOF OF SERVICE.....................................................................................................

CIRCUIT RULE 30(D) STATEMENT.............................................................................

APPENDIX......................................................................................................................

## TABLE OF AUTHORITIES

### Cases-Federal

*Adashunas v. Negley,* 626 F.2d 600 (7th Cir. 1980) ........................................................ 6

*Carrera v. Bayer Corp.,* 727 F.3d 300 (3d Cir. 2013) ..................................................... 9

*Coopers & Lybrand v. Livesay,* 437 U.S. 463 (1978) ..................................................... 10

*Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770 (7th Cir. 2013) ......................................... 5, 10

*Franks v. MKM Oil, Inc.*, *No.* 10 CV 00013, 2012 WL 3903782 (N.D. Ill. Sept. 7, 2012) .......... 7

*Hardy v. City Optical, Inc.*, 39 F.3d 765 (7th Cir. 1994) ........................................... 4, 8

*Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349 (3d Cir. 2013) ....................................... 9

*In re GNC Corp. TriFlex Prod. Marketing and Sales Prac. Lit. (No. II)*, MDL No. 14-2491-JFM,
  2014 WL 2812239 (D. Md. June 20, 2014) ................................................................ 12

*In re GNC Corp. Triflex Products Marketing and Sales Practices Lit.,* MDL No. 14-2491-JFM,
  2014 WL 4447113 (D. Md. Sept. 9, 2014) ................................................................ 12

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2007 WL 4287511
  (N.D. Ill. Dec. 4, 2007) ................................................................................ 14

*Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481 (7th Cir. 2012) ................................... 5

*Jenkins v. White Castle Management Co.,* No. 12 CV 7273, 2015 WL 8324509 (N.D. Ill. Feb.
  25, 2015) ................................................................................................ 6

*Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13,
  2014) .................................................................................................... 10

*King v. Kan. City S. Indus.,* 479 F.2d 1259 (7th Cir. 1973) ....................................... 10

*Langendorf v. Skinnygirl Cocktails, LLC,* --- F.R.D. ----, No. 11 CV 7060, 2014 WL 5487670
  (N.D. Ill. Oct 30, 2014) ................................................................................ 7

*Luckey v. Baxter Healthcare Corp.,* 183 F.3d 730 (7th Cir. 1999) ................................. 12

*Marcus v. BMW of North America, LLC,* 687 F.3d 583 (3d Cir. 2012) ............................... 9

*McDonald v. United Air Lines,* 745 F.2d 1081 (7th Cir. 1984) ..................................... 7

*Moheb v. Nutramax Labs. Inc.*, No. 12 CV 3633-JFW (JCx), 2012 WL 6951904 (C.D. Cal. Sept.
  4, 2012) ................................................................................................ 13

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ......................................... 4, 6

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.,* No. 12-cv-4978, 2015 WL 1538497 (N.D.
  Ill. March 31, 2015) .................................................................................... 6

*Rahman v. Chertoff,* 530 F.3d 622 (7th Cir. 2008) ............................................... 5

*Ramirez v. Palisades Collection LLC,* No. 07 C 3840, 2007 WL 4335293 (N. D. Ill. Dec. 5,
  2007) .................................................................................................... 6

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) .......................................................... 4, 6, 9

*Stephens v. General Nutrition Cos.*, No. 08 C 6296, 2010 WL 4930335 (N. D. Ill. Nov. 23, 2010) ............................................................................................................................... 13

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ........................................ 3

*Winokur v. Bell Fed. Sav. & Loan Ass'n*, 58 F.R.D 178 (N.D. Ill. 1972) ...................... 6

**Statutes-Federal**

28 U.S.C. § 1332(d)(2) ........................................................................................................ 1

28 U.S.C. §§ 1291 or 1292 ................................................................................................ 10

**Statutes-State**

815 ILCS § 505/2 ............................................................................................................... 11

**Rules**

Rule 23 ...................................................................................................................... 9, 10, 11

Rule 23(b)(3) ........................................................................................................................ 2

Rule 23(f) ............................................................................................................................ 10

**Treatises, Restatements, Law Reviews**

7 Charles Alan Wright & Arthur R. Miller, §1760, p. 581 (1972) ................................... 9

Daniel Luks, *Ascertainability in the Third Circuit:  Name that Class Member*, 82 Fordham L. Rev. 2359 (2014) ...................................................................................................... 9

*Dietary Supplements:  An Advertising Guide for Industry,* https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry ................. 11

Stephanie Haas, *Class is in Session:  The Third Circuit Heightens Ascertainability with Rigor in Carrera v. Bayer Corp.*, 59 Vill. L. Rev. 793 (2014) ................................................ 9

## JURISDICTIONAL STATEMENT

Federal jurisdiction exists in this matter under 28 U.S.C. § 1332(d)(2) because Plaintiff Vince Mullins has asserted a class action claim of more than $5 million and is a citizen of Illinois, while Defendant Direct Digital is organized under Delaware law with its principal place of business in North Carolina.   The class certification order on appeal was docketed on September 30, 2014, Defendant filed a request for permission to appeal on October 14, 2014, and this Court granted permission to appeal by order docketed April 3, 2015.[1]

## STATEMENT OF THE ISSUES

I.    **The District Court Erred In Failing To Conduct A Predominance Analysis.**

II.    **The District Court Erred In Relieving Mullins Of His Burden To Establish That Identification Of Class Members Is Feasible.**

III.    **The District Court Erred In Holding That Efficacy Was A Common Question.**

IV.    **The District Court Erred In Finding That Mullins' Claim Was Typical And That He Was An Adequate Class Representative.**

## STATEMENT OF THE CASE

The order granting permission to appeal noted that the parties had already briefed many of the issues.   Direct Digital will rely on the statement of the case set forth in its Request for Permission to Appeal Class Certification.

## SUMMARY OF THE ARGUMENT

First, the district court erred in failing to conduct any analysis of whether common issues predominate over individual issues.   Had it done so, the district court would have necessarily

---

[1]    "App." refers to Direct Digital's Appendix submitted with this brief.  "Dkt." refers to docket entries in Case No. 1:13-cv-1829 (N.D. Ill.) below.  With respect to the Mullins Deposition ("MD"), we have cited to both the Appendix Page and the deposition transcript page, because the transcript that is part of the record was a condensed version.  Accordingly our citations to Mullins will be to the Appendix and then Mullins' Deposition page at that Appendix page, *e.g.*, (App. at ___, MD ___.).

concluded that certification was improper.  Second, the district court failed to require that Mullins meet his burden to establish an ascertainable class, specifically, that identifying class members is feasible.  The only evidence of membership offered by Mullins for class members is testimonial, making identifying class members infeasible.  Third, the district court erroneously found that the efficacy of Instaflex was a common issue where (i) there is competent scientific evidence to support Direct Digital's advertising and (ii) proof that Instaflex was ineffective for Mullins does not prove that Instaflex is ineffective for all class members.  Fourth, the district court erred in finding that the claims of Mullins, who purchased Instaflex based, in part, upon statements about glucosamine made by others, were typical of all class members, many of whom purchased Instaflex based solely on advertising.  Such evidence includes the undisputed facts that Mullins told his doctor, after filing his lawsuit, that he did not suffer from joint pain and his medical records show no evidence of any problems Instaflex claimed to address; that his friend, a physician's assistant, recommended glucosamine to him; and that he purchased Instaflex based on advertisments of other glucosamine products.  Mullins' claim could be defeated by these and other unique defenses, making him an inadequate class representative.  These errors also require denial of class certification.

## ARGUMENT

## I.     THE DISTRICT COURT ERRED IN FAILING TO CONDUCT A PREDOMINANCE ANALYSIS.

A district court can only certify a Rule 23(b)(3) class by finding that common questions of law or fact predominate over questions affecting individual members.  While every consumer fraud case involves individual elements of reliance and causation, to determine whether these individualized issues predominate over common ones, the district court must "assess the difficulty and complexity of the class-wide issues as compared with the individual issues."

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014).   Those individualized inquiries are magnified in this, a multi-state class, because the states included in the class apply different tests for proximate cause, have different elements for fraud claims, and have different triggers for limitations purposes.

The district court failed to conduct this analysis.   Had it done so, it would have been compelled to deny certification because individual issues predominate over the purported common issue of whether Instaflex is effective.   Specifically, whether Instaflex purchasers relied on Direct Digital's advertising as opposed to other information, each class member's expectations of the product, and when each class member knew or should have known of his or her claim, require individual inquiry that render class certification improper.   Of course, predominance is only at issue if Mullins had established a feasible means of identifying class members and if the efficacy of Instaflex could be a common question.   Mullins did not meet his burden on either point.

## II.   THE DISTRICT COURT ERRED IN RELIEVING MULLINS OF HIS BURDEN TO ESTABLISH THAT IDENTIFICATION OF CLASS MEMBERS IS FEASIBLE.

Mullins contends that the issue of whether class members can be feasibly identified is not part of the certification analysis.   On that basis, Mullins refused to put forth any evidence in the district court that class members could be identified at all, let alone identified in a feasible manner.   This Court has long held that the plaintiff has the burden to establish feasibility of class-member identification; failure to satisfy that burden mandates denial of certification.   To the extent that Mullins is credited with the argument that it is feasible to identify, by affidavit only, members of a class consisting of potentially hundreds of thousands of members, he is wrong.

### A.     Identification Of Class Members Is Part Of The Certification Analysis.

Over thirty years ago, this Court held that consideration of the process by which class members are to be identified is part of the class certification analysis because it is probative of the burdens such process might entail and informs the court's judgment as to whether the class is an efficient way of trying the suit. *Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981). "Identification of the class serves at least two obvious purposes in the context of certification. First it alerts the court and the parties to the burdens that such a process might entail. In this way, the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket." *Id.* at 670. The second purpose is to insure "that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided." *Id*. The law has not changed since *Simer* was decided. The plaintiff must "show (it is the plaintiff's burden to prove the class should be certified), that the class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citations omitted).

### B.     Certification Is Improper Where A Plaintiff Fails To Establish Feasibility.

Certification is improper as a matter of law where the plaintiff fails to carry her burden to establish that class member identification is feasible. *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994). In *Hardy*, the plaintiff sought certification of a class of patients whose ophthalmologists had refused to provide them with a copy of their contact lens prescription. *Id.* The defendant submitted proof that it kept records of patients who had made written requests for prescriptions and argued that it would be infeasible to identify class members who, like the plaintiff, had only made oral requests for prescriptions. *Id.* The record was silent on whether the defendant kept records of patients who had made oral requests but the plaintiff did not respond to the defendant's feasibility argument. *Id.* The district court denied certification on other grounds.

*Id.* at 770-771.  But this Court held that the grounds relied upon by the district court did not justify denial of certification.  *Id.* at 771.  Rather than remand the case for reconsideration, this Court instead upheld denial of certification as a matter of law on the alternate ground that plaintiff had failed to satisfy her burden to prove that identification of class members was feasible:

> Were the class limited to such patients [who made a written request for a prescription], the identification of the class members for purposes of notice would be feasible.  But if the class is broadened to include patients who made only oral requests—as it must be for Hardy to be within the class and thus an eligible candidate for class representative—the problem of identifying and thus of notifying the class members may be infeasible.  May be.  Or may not be, since, for all that appears, City Optical has a record of the oral requests too.  Nevertheless it is an issue that would have to be explored before Hardy could be deemed an adequate class representative.  But in response to this argument by City Optical, Hardy in her reply brief, said exactly nothing. . . .  [T]he failure to reply to an adversary's point can have serious consequences.  The district judge's ruling denying class certification must be affirmed even though it is conceivable that if he had explored the issue he would have found the problem of unmanageability to be less serious than City Optical claims.

*Id.*; *cf. Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013) (upholding order decertifying class where plaintiff refused to propose a feasible method of determining damages for each class member; "if class counsel is incapable of proposing a feasible litigation plan though asked to do so, the judge's duty is at an end").

### C.    Identification Of Class Members Is Infeasible Where Too Many Individualized Hearings Are Required.

Even where the district court is willing to go to significant effort to identify class members, class certification is erroneous where the effort required is too great.  *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (reversing class certification where district court approved an "elaborate scheme" to identify class members); *Rahman v. Chertoff*, 530 F.3d 622, 627-28 (7th Cir. 2008) (reversing certification of class of United States

citizen/travelers who had been placed on a "watch list" where, because of a state-secret privilege, some members of the class could never be identified).[2]

Consistent with this Court's rulings, since at least 1972, district courts in this Circuit have held that, "[i]f the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." *Ramirez v. Palisades Collection LLC,* No. 07 C 3840, 2007 WL 4335293, *3 (N. D. Ill. Dec. 5, 2007) (denying certification of class of debtors whose debt was created by a non-written contract where an "exhaustive, individualized inquiry" would be required to determine whether purported class member's debt was created by written contract) (citing authorities); *see also Winokur v. Bell Fed. Sav. & Loan Ass'n*, 58 F.R.D 178, 182 (N.D. Ill. 1972) (where individual hearings to test purported class members membership would be required, class would not be certified).

District courts in this Circuit have concluded time and again that where the only proof of class membership is testimonial, meaning that individualized hearings would be required to test the accuracy of such evidence, class member identification is infeasible. *Physicians Healthsource, Inc. v. Alma Lasers, Inc.,* No. 12-cv-4978, 2015 WL 1538497, *6 (N.D. Ill. March 31, 2015) (denying certification of class of fax recipients where defendant kept no record of fax numbers to which fax had been sent); *Jenkins v. White Castle Management Co.,* No. 12 CV 7273, 2015 WL 8324509, *6 (N.D. Ill. Feb. 25, 2015) (denying certification of class of fast food

---

[2]    This Court has routinely affirmed denial of certification orders where the district court has itself concluded that it would be extremely expensive or burdensome to identify class members. *See Oshana,* 472 F.3d at 514-15 (upholding denial of certification of class of persons who bought fountain diet coke, which contained saccharine, in reliance on statements that bottled diet coke contained aspartame, where class members were "not sufficiently identifiable"); *Adashunas v. Negley,* 626 F.2d 600, 603-04 (7th Cir. 1980) (upholding denial of certification of a class of children improperly denied special education services where identifying class members would be a "gargantuan task" and individual members would be "so difficult to identify" that the class was not "nearly ascertainable."); *Simer,* 661 F.2d at 671 (upholding denial of certification where "the district court believed that it would require a great deal of its own time as well as a large amount of money to accomplish this task" of identifying class members).

workers required to reimburse employer for meals of customers who did not pay where there was no written documentation of policy, all payments were in cash, and plaintiffs had no receipts for cash payments); *Langendorf v. Skinnygirl Cocktails, LLC*, --- F.R.D. ----, No. 11 CV 7060, 2014 WL 5487670, *2 (N.D. Ill. Oct 30, 2014) (denying certification of class that purchased purportedly "all natural" margarita drink where plaintiff failed to provide any evidence that records existed to show who purchased the drink); *Franks v. MKM Oil, Inc.*, *No.* 10 CV 00013, 2012 WL 3903782, *7 (N.D. Ill. Sept. 7, 2012) (denying certification where there was no evidence that receipts and records of payments existed, and to the extent there were cash payments "identifying the class would be tremendously burdensome").[3]

### D.    Mullins Did Not Satisfy His Burden To Prove Feasibility.  Moreover, The Record Establishes That It Would Be Infeasible To Identify Class Members.

Direct Digital has sold well over one million bottles of Instaflex nationwide since 2009 through numerous national brick-and-mortar retail chains (e.g. Walgreens), local mom-and-pop stores, the Instaflex website, and various online vendors (e.g. Amazon.com).  (App. at 89-90.) Instaflex is one of four products under the Instaflex label (including Instaflex Bone Support and Instaflex Muscle Support), and there are many more competing products that sound or look similar and contain glucosamine (including TriFlex, TripleFlex, Cosamin, Joint Juice, Move

---

[3]    While some level of mini-trial to identify class members might be appropriate under some circumstances, *see McDonald v. United Air Lines,* 745 F.2d 1081 (7th Cir. 1984), they would not be appropriate here, where the plaintiff has offered no objective evidence of class membership and there might be hundreds of thousands of class members. In *McDonald,* the court certified a class of female flight attendants who had been fired or resigned during a three-year period based upon United Airlines' policy requiring female flight attendants to be unmarried.  The defendant did not object to class certification and the court had mini-trials to identify those who had been terminated or resigned based on the unlawful policy.  Because the defendant did not object to class certification, the written opinion does not disclose why the district court concluded that mini-trials to identify class members was feasible. However, it is readily apparent that proof that prospective class members had been employed by United, had been fired or resigned from United, and were married could all be proven by documentary evidence and did not rest upon individual credibility determinations.  Moreover, since, as of 2011, United only had 15,000 flight attendants, the number of flight attendants who had resigned or been terminated during the three-year period was likely quite small.

Free, Osteo Bi-Flex).  (App. at 90, 93.)  In fact, Mullins testified that, when he went to purchase a product containing glucosamine, he observed "10 to 15" joint products "that to me looked very similar."  (App. at 19, MD 46-47.)

Mullins concedes that he has no objective proof that he purchased Instaflex and Mullins' own proposed damages expert conceded that he "[do]esn't know who actually bought the stuff at the end of the day," has no idea how one could even determine who purchased Instaflex at retail outlets, and he has not requested from third-party vendors any point-of-sale data, which, even if requested, would not include any customer-specific identification information. (Id. at 22, MD 58-60; Id. at 73-74, 78-79, 85.)  Despite recognizing in his motion to the district court that it must be "administratively feasible for the court to ascertain whether a particular individual is a member" of the proposed class, Mullins offered no means of doing so other than proof by class member affidavits.  (Dkt. 47 at 10.)

Direct Digital pointed out that identifying class members would require a fact-finder to assess the credibility of each claimant's memory that she bought Instaflex Joint Support, as opposed to another Instaflex product, and as opposed to one of the 10 or 15 competing and similar-looking products.  (Dkt. 64 at 10-12.)  Other details of purchases would be necessary including where claimants purchased Instaflex (because Mullins seeks to certify a class of persons located in only certain states).  Since Instaflex has sold well over a million bottles since 2009, that could amount to hundreds of thousands of mini-trials just to determine class membership.  Direct Digital contended these facts made identifying class members infeasible, rendering class certification improper.  (Id.)  Unlike the plaintiff in *Hardy,* Mullins did not meet Direct Digital's argument with silence.  Rather, Mullins affirmatively disclaimed any obligation to show that class members could be identified.  "[I]dentification of class members, including by

affidavit, is not a Rule 23 consideration." (Dkt. 73 at 8.) Based on this position, Mullins declined to put forth any evidence that class members could be identified at all or that doing so would be feasible. Because Mullins failed to meet his burden of proof, the Court need not look further to find that certification should have been denied. To the extent Mullins' position is that hundreds of thousands of mini-trials is a feasible method to identify class members, he is wrong.

### E. The Third Circuit's Feasibility Decisions Are Not Novel.

In a trilogy of cases issued between 2012 and 2013, the Third Circuit stated what has been the law of this Circuit for over thirty years – a plaintiff's burden of proof on class certification includes proposing a feasible way to identify class members.[4] Perhaps because the Third Circuit cases were issued in quick succession, they have been wrongly hailed as working a fundamental change to the class certification analysis.[5] These breathless pronouncements as to the novelty of the *Carrera* line of cases are wrong. Feasibility of identifying class members has been widely accepted as a requirement of Rule 23 since at least 1972. 7 Charles Alan Wright & Arthur R. Miller, §1760, p. 581 (1972) (citing authorities). It was expressly made the law this Circuit in 1981. *Simer,* 661 F.2d at 669.

Critics of the feasibility requirement fear that it will eliminate class actions where documentary proof of purchase is unlikely to exist and the amounts at issue are so small, no one would proceed with the claims except as a class. *Jones v. ConAgra Foods, Inc.,* No. C 12-01633

---

[4]     *Carrera v. Bayer Corp.,* 727 F.3d 300 (3d Cir. 2013); *Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349 (3d Cir. 2013); *Marcus v. BMW of North America, LLC,* 687 F.3d 583 (3d Cir. 2012).

[5]     One commentator has claimed that the Third Circuit adopted a "heightened approach to ascertainability," and "diverges from other circuit courts" by requiring that, in addition to an objective definition, plaintiffs prove that an administratively feasible mechanism for determining class membership exists." Daniel Luks, *Ascertainability in the Third Circuit: Name that Class Member*, 82 Fordham L. Rev. 2359, 2379-90 (2014); s*ee also* Stephanie Haas, *Class is in Session: The Third Circuit Heightens Ascertainability with Rigor in Carrera v. Bayer Corp.*, 59 Vill. L. Rev. 793-95, 818-19 (2014) (claiming that *Carrera* has placed the "viability of consumer class action" at risk); *id.* (incorrectly claiming that *Carrera* denied class certification when it simply remanded the case).

CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) (collecting authorities). This Court has previously and correctly rejected the theory that, where compliance with the law sounds the "death knell" for a class action, compliance with the law is excused. For example, in 1966, based on the concern that denial of class certification for small-dollar claims would effectively terminate the litigation, the Second Circuit developed the "death knell" doctrine to permit interlocutory appeals of such orders although they were not appealable under either 28 U.S.C. §§ 1291 or 1292. This Court rightly rejected the "death knell" doctrine and was vindicated by the Supreme Court, which held that such concerns were for the legislature, not the courts. *See King v. Kan. City S. Indus.,* 479 F.2d 1259, 1260 (7th Cir. 1973); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 472-476 (1978). Twenty years later Congress acted on the Supreme Court's invitation by adopting Rule 23(f).

Rule 23 requires the plaintiff to establish a feasible means of identifying class members before the class can be certified. That inability to satisfy the Rule's requirements might, as a practical matter, terminate the case, is no justification for excusing compliance with the Rule. *King,* 479 F.2d at 1260 (rejecting the death knell doctrine); *see also Espenscheid,* 705 F.3d at 776. In *Espenscheid*, employees claimed that their employer instructed them not to record compensable time. Because there was no consistent documentary proof as to the amount of each employee's uncompensated time, the only method of proof would have been 2,341 separate evidentiary hearings. *Id.* at 773. Because each class member's damages would be insufficient to make individual suits viable, this Court recognized that denial of class certification would likely prevent assertion of the claims altogether. "[I]t is class treatment or nothing." *Id.* at 776. Even so, the Court did not find the potential demise of the case a justification for excusing compliance with Rule 23. *Id.*

In light of *Espenscheid's* class counsel's paltry efforts to aid the district court in finding a feasible method of damage calculation, this Court was not required to deal the death blow to a class action that, notwithstanding tremendous effort, did not satisfy Rule 23. The same is true here. Class counsel failed to put forth evidence for how class members could be identified. This Court should therefore hold that Mullins failed to satisfy his burden of proof.

## III. THE DISTRICT COURT ERRED IN HOLDING THAT EFFICACY WAS A COMMON QUESTION.[6]

The district court envisions a trial on the purportedly common issue of "whether the ingredients of Instaflex provide any health benefits to a person's joints and whether Instaflex's labeling deceives the public consumer." (App. at 3.) There are two major problems with this plan.

First, although Mullin's expert does not believe the glucosamine is effective, under the Federal Trade Commission Act, upon which the Illinois Act is based, Direct Digital does not engage in deception as long as its advertising is supported by competent and reliable scientific evidence. *Dietary Supplements: An Advertising Guide for Industry,* https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry.[7] The only clinicial study performed on Instaflex showed that the product's claims are supported. (Dkt. 64-9.) Likewise, the National Advertising Division of the Better Business Bureau concluded that Direct Digital's claims are so supported. (Dkt. 64-8.) Where reasonable experts disagree on efficacy, there can be no fraud. *Luckey v. Baxter Healthcare Corp.,* 183 F.3d 730, 732 (7th Cir. 1999); *In re GNC Corp. TriFlex Prod. Marketing and Sales Prac. Lit. (No. II)*, MDL No. 14-

---

[6] Inexplicably, directly contrary to its finding on commonality, the district court found that the class was ascertainable because the class claims were not based on efficacy. (App. at 2.)

[7] The Federal Trade Commission's interpretation of its own Act serves as guidance for interpretation of the Illinois Consumer Fraud and Deceptive Business Practice Act. 815 ILCS § 505/2.

2491-JFM, 2014 WL 2812239 (D. Md. June 20, 2014); *In re GNC Corp. Triflex Products Marketing and Sales Practices Lit.,* MDL No. 14-2491-JFM, 2014 WL 4447113, *2, n.4 (D. Md. Sept. 9, 2014).

In *Luckey*, the plaintiff argued that Baxter committed fraud when it represented to the FDA that its blood plasma was free of hepatitis because the testing Baxter performed was not, in the plaintiff's opinion, sufficient to support that statement. *Luckey*, 183 F.3d at 731. This Court held that even if the plaintiff won a "battle of the experts" on the most effective test, that would not render Baxter's statement fraudulent:

> The principal difficulty with Luckey's position is its equation of ineffective testing with no testing, followed by the proposition that a battle of the experts in litigation determines whether testing is effective. Only in Humpty Dumpty's world of word games would anyone apply the label "fraud" to the kind of representation Baxter made.

*Id.* at 732.

The District Court of Maryland dismissed a fraud claim on the same grounds in *In re GNC Corp.* 2014 WL 2812239 at *4, a consumer fraud case claiming that GNC's statements about the efficacy of glucosamine and chondroitin were fraudulent. "[T]he mere existence of a "battle of the experts" on the issue of glucosamine and chondroitin's effect on non-arthritic consumers is not sufficient to establish that defendants' advertisements violate the state consumer protection statutes in this case." *Id.* The court subsequently denied plaintiff's motion for reconsideration, reiterating "should those who choose to purchase the pills have to pay more for them (or be deprived of the opportunity to purchase them at all) when the science is uncertain merely because juries disagree with their own judgment about the pills' efficacy?" *In re GNC Corp.,* 2014 WL 4447113, at *2 n.4. As in these cases, even if Mullins could convince a fact finder that the science against efficacy is better than the science supporting efficacy, that

conclusion could not render Direct Digital's advertising deceptive when its advertising is supported by competent and reliable scientific evidence.

The second problem with the district court's plan is that the efficacy of a health product is proven by science, not trial. Here, Mullins and the district court propose a trial that will essentially be a medical study in which the sole subject is Mullins. If Mullins convinces the fact finder that Instaflex did not work for him, then it will be deemed ineffective for every class member without regard to the each individual class member's physical condition, how long the member took the product, or what dosage the member used. Courts, however, are not equipped to design and implement medical studies, as recognized by at least one district court in California. *Moheb v. Nutramax Labs. Inc.*, No. 12 CV 3633-JFW (JCx), 2012 WL 6951904, at *4 (C.D. Cal. Sept. 4, 2012). "Medical studies control for such [differences] among participants precisely because they can effect results." *Id.* For this very reason, at least one court in this district has held that efficacy is not a common question that can be determined on a class-wide basis. *Stephens v. General Nutrition Cos.*, No. 08 C 6296, 2010 WL 4930335, *3 n.2 (N. D. Ill. Nov. 23, 2010) (plaintiff's claim "would require an individual determination as to whether the product produced the desired effect on each user"). Whether a health product is effective as to one person is, by definition, not a common question.

## IV.    THE DISTRICT COURT ERRED IN FINDING THAT MULLINS' CLAIM WAS TYPICAL AND THAT HE WAS AN ADEQUATECLASS REPRESENTATIVE.

Typicality does not exist where a putative class is exposed to "a varied mix of representations communicated through different channels and absorbed in different ways and to different degrees." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2007 WL 4287511, at *6 (N.D. Ill. Dec. 4, 2007). Purchasers of a health product are particularly likely to be exposed to recommendations from health professionals, defeating

typicality.  *Moheb,* 2012 WL 6951904 at *4 (no typicality because "some of the class members may have relied on the recommendations of doctors, veterinarians, reviews, articles, or retailers' sales pitches").  That is exactly what happened here.  Mullins went looking for a product containing glucosamine because his friend, a physician's assistant, had previously told Mullins that glucosamine helped with cartilage repair and joint stiffness, and because Mullins had read advertisements for **other** glucosamine products in magazines.  (App. at 19-21, MD 49-54).  Not only does this testimony render Mullins' claim atypical from the claims of those who relied solely on Instaflex advertising, because the testimony could defeat Mullins' claim altogether, Mullins is also not an adequate class representative.

In fact, whether Mullins was actually suffering from joint pain is disputed.  Mullins is a childhood friend of Joe Siprut, whose primary practice is consumer class action litigation.  (Id. at 36, MD 115-16.)  Mullins and Siprut talk once a month and Mullins has kept abreast of Siprut's career.  (Id. at 37-38, MD 119, 123-24.)  Mullins claims that, from October 2012 through the present, he has suffered periodic bouts of joint pain after running.  (Id. at 10-11, MD 13-14.)  Mullins claims to have purchased a glucosamine product called Joint Juice in January 2013 but stopped using it after twelve days because it did not work.  (Id. at 34, MD 107-08.)

Notwithstanding his disappointment with glucosamine, and notwithstanding the fact that he was not then suffering from joint pain, (Id. at 30, MD 90), the next month, Mullins went looking for another product containing glucosamine and, therefore, purchased Instaflex.  (Id. at 19-21, MD 47-54.)  Purportedly coincidentally, also in late February or early March of 2013, Siprut told Mullins that he was considering filing a glucosamine class action and wanted to know whether Mullins had taken any products containing it.  (Id. at 37, MD 119-20.)  On March 6,

2013, Mullins engaged Siprut to represent him and, two days later, Siprut's firm, with the assistance of co-counsel, filed this lawsuit.  (Id. at 40, MD 130.)

Significantly, shortly after this suit was filed, on January 3, 2014, Mullins filled out a medical history form in preparation for a physical.  (Id. at 56, MD 196.)  Contrary to the claims made in this suit, Mullins did not identify joint pain in response to the instruction to "list any other medical condition" and the physician's notes from the physical state "**No joint or muscle pains**."  (Id. at 56-59, MD 197-206.)

On this record, a reasonable fact finder could choose to believe the statements Mullins made to his physician – that he did not suffer from joint pain – rather than the statements Mullins made in the lawsuit.  A reasonable juror could also conclude that, after having an unsatisfactory experience with glucosamine in January 2013, Mullins purchased Instaflex a month later, not because he thought glucosamine would be effective, but because he wanted to be a plaintiff in a class action lawsuit brought by his friend.  If the fact finder reaches either of those conclusions, the claims of the entire class are in jeopardy, meaning that Mullins is not an adequate representative.

## CONCLUSION

For the reasons set forth above, the class certification order should have been denied.


By: /s/ Ari N. Rothman
Attorney   for   Defendant-Appellant

**CERTIFICATE OF COMPLIANCE WITH FED. R. CIV. P. 32(A)(7)**

The undersigned, counsel of record for the Defendant-Appellant, Direct Digital LLC,

furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7)

for a brief produced with a proportionally spaced font. The length of this brief is 5,086 words.

Dated May 4, 2015

Roeser Bucheit and Graham, LLC

/s/ Darrell J. Graham
Darrell J. Graham
Attorney for the Defendant-Appellant, Direct
Digital LLC

2 N. Riverside Plaza, Ste. 1420
Chicago, IL 60606
Telephone No.: (312)-621-0301

**PROOF OF SERVICE**

The undersigned, counsel for the Defendant-Appellant, Direct Digital LLC, hereby certifies that on May 4, 2015, a digital version of the Brief, Required Short Appendix and Separate Appendix were served on Plaintiff-Appellee by the Court's Electronic Filing and Service System.  In addition, two hard copies of the Brief and Required Short Appendix of Appellant, and one copy of the Separate Appendix were served by U.S. Mail  to counsel for the Plaintiff-Appellee, Vince Mullins.

Dated May 4, 2015

Roeser Bucheit & Graham LLC

/s/ Darrell J. Graham
Darrell J. Graham
Attorney for the Defendant-Appellant, Direct Digital LLC

2 N. Riverside Plaza, Ste. 1420
Chicago, IL 60606
Telephone No.: (312)-621-0301

**CIRCUIT RULE 30(D) STATEMENT**

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

/s/ Darrell J. Graham
Darrell J. Graham

**APPENDIX**

| APP. 1-4 | **Short Appendix**—9/30/2014 Order Granting Class Certification (Dkt. No. 89)(attached hereto) |
|---|---|
| **Separate Appendix (Filed Separately)** | |
| APP. 5-65 | Deposition of Vince Mullins (Exhibit E to Brief, Dkt. No. 73-6) |
| APP. 66-87 | Deposition excerpts of Keith Reutter, Ph.D (Exhibit 11 to Brief, Dkt. No. 64-11) |
| APP. 88-93 | Excerpts of Declaration of Brandon Adcock (Exhibit 1 to Brief, Dkt. No. 64-1) |

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VINCE MULLINS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 13 CV 1829 |
| v. | ) ) | Hon. Charles R. Norgle |
| DIRECT DIGITAL, LLC., | ) ) | |
| Defendant. | ) ) | |

## ORDER

Plaintiff Vince Mullins' Renewed Motion for Class Certification [45] is granted in part and denied in part.

## STATEMENT

This is a putative consumer fraud class action arising under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 502/1, *et seq.*, and similar consumer protection laws in nine other states. Plaintiff Vince Mullins ("Plaintiff"), on behalf of himself and others similarly situated, sues Direct Digital, LLC ("Defendant") for fraudulently purporting that its product, Instaflex Joint Support ("Instaflex"), has health benefits when it is actually nothing more than a sugar pill placebo. Specifically, Plaintiff alleges that the statements "Relieve Discomfort," "Improve Flexibility, "Increase Mobility," "scientifically formulated," and "clinically tested" on each Instaflex label are deceptive and constitute misrepresentation. Before the Court is Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the motion is granted in part and denied in part.

Plaintiff moves to certify one of two classes. The first is a multi-state class including:

> All consumers in Illinois and states with similar laws, who purchased Instaflex within the applicable statute of limitations of the respective Class States, for personal use until the date notice is disseminated.

Mem. in Supp. of Pls.' Renewed Mot. for Class Certification 4. In the alternative, Plaintiff moves to moves to certify a class including only Illinois residents. Id.

Class certification is more than a "mere pleading standard." Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). Plaintiff "must not only 'be prepared to prove that there are *in* fact sufficiently numerous parties, common questions of law and fact,' typicality of claims or defenses, and adequacy of representation. [Plaintiff] must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." Id.; see also Fed. R. Civ. P. 23(a)-(b). "On issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff." Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012).

Although Plaintiff need not show that the proposed class satisfies Rule 23's requirements "to a degree of absolute certainty," he must prove each disputed requirement by a preponderance of the evidence. Id. (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)).

There are several class action lawsuits pending in California against manufacturers of various health supplements containing the active ingredient glucosamine sulfate, supplements very similar to Instaflex. In those three cases, like this one, plaintiffs allege that defendants' products do not deliver the marketed health benefits. In those cases, the district court has granted class certification twice and denied it once. See McCrary v. Elations Co., 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) (granting class certification); Cabral v. Supple, LLC, No5:12-cv-0085 MWF (OPx) (C.D. Cal. Fe. 14, 2013) (granting class certification); Moheb v. Nutramax Laboratories Inc., 2012 WL 6951904 (C.D.Cal. Sept. 4, 2012) (denying class certification). The Court "has discretion to evaluate practical considerations that may make class treatment unwieldy despite the apparently common issues." In re IKO Roofing Shingle Prods. Liability Litig., 757 F.3d 599, 603 (7th Cir. 2014). In a consumer fraud class action, the critical element for class certification is that a plaintiff has "a theory of loss that match[es] the theory of liability." Id. at 602.

In Moheb, Plaintiff's common contention was that "Defendant misrepresents the efficacy of Cosamin because it has not been 'proven' to reduce joint [sic] and cannot be the 'only' brand proven to reduce joint pain." 2012 WL 6951904 at *4. Class certification failed in Moheb for multiple reasons. One reason was that given plaintiff's theory of liability, the commonality and typicality prerequisites could not be met; there were individual questions of what, if any, benefits the class members received from using the product and the plaintiff's medical condition was not typical of the other class members. Id.

In McCrary, on the other hand, plaintiff's theory of liability was that "Elations is not clinically proven to have any impact on joints, and Elations' label was therefore false." 2014 WL 1779243 at *3. Because McCrary's legal theory was not based on the efficacy of the product, but was limited to the veracity of the statements on the product's label, "[b]y definition, class members were exposed to these labeling claims, creating a 'common core of salient facts.'" Id. at *10 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-20 (9th Cir. 1998)). The question of false advertising was common to all class members and plaintiff's claims were typical of all class members because he relied on the false advertising before purchasing the product. Id.

Here, Defendant challenges whether the class can be feasibly ascertained and whether Plaintiff can satisfy the following three prerequisites of Rule 23(a) — commonality, typicality, and adequacy. The Court finds that this case is analogous to McCrary because Plaintiff's claims are related to the veracity of the statements on Instaflex's label. For the reasons discussed below, Plaintiff's proposed class is ascertainable and the prerequisites of Rule 23(a) are satisfied.

Plaintiff's class is ascertainable because it is objectively contained to all individuals who purchased Instaflex for personal use during the class period and the class period is finite. The class period will close when notice of this action is disseminated to the class members and will include all individuals who purchased Instaflex within the relevant statute of limitations period allowed by the relevant consumer fraud statute of the state in which they reside.[1]

---

[1] For example, the relevant statute of limitations in Illinois is three years, 815 ILCS 505/10a(e), and in California the relevant statute of limitations is four years, Cal. Bus. & Prof. Code § 17208.

Defendant concedes that it has sold Instaflex to thousands of consumers across the nation, thus "there are in fact sufficiently numerous parties" to certify a class. Wal-Mart Stores, Inc, 131 S. Ct. at 2551.

To satisfy commonality, the plaintiff's "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" Id. Commonality is satisfied here because the questions of law and fact are common to the class: whether the ingredients of Instaflex provide any health benefits to a person's joints and whether Instaflex's labeling deceives the public consumer.

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998) (internal quotation marks and citation omitted). Plaintiff claims that he relied on Instaflex's label when he purchased it and he received no benefit after using it. His claim is based on Illinois' and other states' consumer protection statutes. This is the same course of conduct and same legal theory that would be typical for the other class members, therefore, typicality is met.

Adequacy is met because Plaintiff's tenuous relationship with one member of class counsel has no bearing on his ability to fairly and adequately protect the interests of the class. Plaintiff has already retained experienced and qualified class counsel, attended depositions, and has no disabling conflicts with the interests of the class. The prerequisites under Rule 23(a) are satisfied.

Next, Plaintiff seeks certification under Rule 23(b)(2) and (b)(3). To obtain certification for a class seeking injunctive relief under Rule 23(b)(2), Plaintiff must show: "(1) the plaintiffs have suffered irreparable harm; (2) monetary damages are inadequate to remedy the injury; (3) an equitable remedy is warranted based on the balance of hardships between the plaintiffs and defendant; and (4) the public interest would be well served by the injunction." Karman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 892 (7th Cir. 2011) (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (outlining traditional test for permanent injunctive relief)). Plaintiff alleges, *inter alia*, that the Instaflex product is a phony and he seeks a refund (as well as the appropriate fines under the state consumer fraud statutes) for himself and the other members of the class. The harm to Plaintiff, and likewise the class, "is easily remedied by an award of money damages, a fully adequate remedy." Id. While accurate and truthful labeling would be in the public interest, the other elements required for a permanent injunction are not met.

Pursuant to Rule 23(b)(3), Plaintiff must show by a preponderance of evidence: "(1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." Messner, 669 F.3d at 811 (citing Fed. R. Civ. P. 23(b)(3)). The Court has a "duty to take a 'close look' at whether common questions predominate over individual ones." Comcast Corp., 133 S. Ct. at 1432. However, "[i]n conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." Messner, 669 F.3d at 811 (citations omitted). Class treatment is appropriate where, as here, a plaintiff's theory of damages matches their theory of liability. In re IKO Roofing Shingle Products Liability Litigation, 757 F.3d at 602.

Plaintiff's theory of damages—a full refund and statutory consumer fraud fines—matches his theory of liability—Instaflex does not perform as advertised. Whether the medical studies of

3

Plaintiff's experts will show that "glucosamine, alone or in combination, is not effective in providing the represented joint health benefits" and Instaflex "was no more effective than [a] placebo" is a question of fact common to the members of the proposed class. Pl. Compl. ¶ 21, 22. If the medical studies are true, Instaflex's label would be fraudulent on its face, and this question concerns every member of the class. "Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win." Schleicher v. Wendt, 618 F.3d 679, 686 (7th Cir. 2010). Proceeding to trial as a class will produce a common answer to whether the advertisements on Instaflex's label are false.

Given the sheer size of this class, certifying the class will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Prods. v. Windsor, 521 U.S. 591, 615 (1997) (internal quotation and citation omitted). Thus, class certification is superior to individual lawsuits.

Finally, Plaintiff's request of the Court to appoint Stewart M. Weltman, LLC; Bonnett, Fairbourn, Friedman & Balint PC; and Siprut PC as class counsel is granted pursuant to Rule 23(g).

For the foregoing reasons, Plaintiff's motion to certify a multi-state class pursuant to Rule 23(b)(3) is granted. His request for an injunctive class under Rule 23(b)(2) is denied.

IT IS SO ORDERED.


ENTER:


_____
CHARLES RONALD NORGLE, Judge
United States District Court


DATE:  September 30, 2014


4